UNITED STATES, Appellee,

v.

Bruce C. PALMER, Staff Sergeant, U.S. Air Force, Appellant.

No. 64,060.
ACM 27209.

U.S. Court of Military Appeals.

Argued Feb. 13, 1991.

Decided July 29, 1991.

**8**

For Appellant: *William J. Holmes* (argued); *Lieutenant Colonel Jeffrey R. Ow-*

ens and *Captain Darla G. Orndorff* (on brief); *Colonel Richard F. O'Hair.*

For Appellee: *Captain Thomas E. Wand* (argued); *Major Brenda J. Hollis* and *Captain Leonard R. Rippey* (on brief); *Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

COX, Judge:

Appellant was convicted of raping and sodomizing his minor stepdaughter.[1] The primary issue on appeal concerns the concept of "constructive force."[2]

 To convict an accused of rape, the prosecution must prove, among other things, that the act of sexual intercourse occurred "by force and without [the] consent" of the victim.[3] The military judge

1. A general court-martial comprised of officer members convicted appellant, contrary to his pleas, of two specifications of rape, two specifications of sodomy, and one specification of indecent assault—all upon his stepdaughter—in violation of Articles 120(a), 125, and 134, Uniform Code of Military Justice, 10 USC §§ 920(a), 925, and 934, respectively. The rapes and sodomies occurred in June 1988, when the victim was 12. The indecent assaults occurred on "divers occasions" over the year and a half preceding the rapes and sodomies. The court-martial sentenced appellant to a dishonorable discharge, confinement for 17 years, and reduction to airman basic. The convening authority approved the sentence, and the Court of Military Review affirmed. 29 MJ 929 (1989).

2. We granted review of these issues raised by appellant:

III

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING THE TESTIMONY OF MAJOR NANCY SLICNER BECAUSE IT IMPERMISSIBLY INVADED THE PROVINCE OF THE MEMBERS BY RENDERING A PERSONAL OPINION CONCERNING THE GUILT OF APPELLANT.

IV

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING TESTIMONY CONCERNING OTHER ACTS OF MISCONDUCT OVER THE SPECIFIC OBJECTION OF APPELLANT.

In addition, we specified the following issues:

(A)

WHETHER THE PROSECUTION ADEQUATELY PROVED THE ELEMENTS OF

FORCE AND LACK OF CONSENT AS TO CHARGES I AND III.

(B)

WHETHER THE MILITARY JUDGE PROPERLY INSTRUCTED AS TO THE ELEMENTS OF FORCE AND LACK OF CONSENT IN CHARGES I AND III.

(C)

WHETHER THE MILITARY JUDGE PROPERLY INSTRUCTED ON MISTAKE AS TO CHARGES I AND III AND ON THE EFFECT OF THE "PARENTAL RELATIONSHIP" ISSUE.

The specified issues are reformulations of issues assigned by appellant both here and below.

3. Rape is denounced in these terms:

Any person subject to this chapter who commits an act of sexual intercourse with a female not his wife, *by force and without her consent,* is guilty of rape and shall be punished by death or such other punishment as a court-martial may direct.

Art. 120(a), UCMJ, 10 USC § 920(a) (emphasis added). Paragraph 45c(1)(b), Part IV, Manual for Courts–Martial, United States, 1984, provides the following "Explanation" of *"Force and lack of consent"*:

Force and lack of consent are necessary to the offense. Thus, if the female consents to the act, it is not rape. The lack of consent required, however, is more than mere lack of acquiescence. If a woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent. *Consent, however, may not be inferred if resistance*

gave a "standard" instruction on the meaning of force and lack of consent. *See infra.* In addition, he gave this "tailored" instruction:

Resistance of a victim is a relative term and must be considered in accordance with the special circumstances of each case. Consent to sexual intercourse if induced by fear, fright or coercion, is equivalent to physical force. Accordingly, in the rape of a stepdaughter by her father, it is not necessary to show that she physically resisted. It is sufficient that she submitted under compulsion of a parental command.

This instructional fragment, to which appellant lodged a timely objection at trial, forms the basis of his complaint on appeal. "In essence," counsel hyperbolizes,

the military judge instructed the members that in the case of a father and his stepdaughter, the prosecution need not prove force or lack of consent Such an instruction established a *per se* rule of force and lack of consent where an accused and his stepdaughter were involved.

We reject this extrapolation. Within the context of the complete instructions, the judge's comments were acceptable.

## I

■ In the law of rape, various types of conduct are universally recognized as sufficient to constitute force. The most obvious type is that brute force which is used to overcome or prevent the victim's active resistance. Physical contact, however, is not the only way force can be established. Where intimidation or threats of death or physical injury make resistance futile, it is said that "constructive force" has been applied, satisfying this element. *See United States v. Bradley,* 28 MJ 197 (CMA 1989). Closely related to these is the situation in

which the victim is incapable of consenting because she is asleep, unconscious, or lacks mental capacity to consent. In such circumstances, the force component is established by the penetration alone. *See generally* B. Morosco, *The Prosecution and Defense of Sex Crimes* § 1.02[2] (1990); R. Perkins and R. Boyce, *Criminal Law,* Ch.2, § 5D at 209–14 (1982); 3 *Wharton's Criminal Law* §§ 287–89 (C. Tortia 14th ed.1980).

Military law conforms with these principles. Para. 45c(1)(b), Part IV, Manual for Courts–Martial, United States, 1984, set out in n.3 of this opinion. *See also United States v. Williamson,* 24 MJ 32 (CMA 1987); *United States v. Hicks,* 24 MJ 3 (CMA), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987).

The particular bone of contention in this case concerns a species of "constructive force." Many jurisdictions have explicitly recognized that a parent or other authority figure can exert a "moral, psychological or intellectual force" over a child which is the compulsory equivalent of a threat or intimidation. *See, e.g., Commonwealth v. Ruppert,* 397 Pa.Super. 132, 579 A.2d 966, 968–69 (1990).

As Justice Martin stated in the oft-quoted opinion of the North Carolina Supreme Court:

The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.

*State v. Etheridge,* 319 N.C. 34, 352 S.E.2d 673, 681 (1987). *See also State v. Eskridge,* 38 Ohio St.3d 56, 526 N.E.2d 304 (1988); *Griswold v. State,* 290 Ark. 79, 716

---

*would have been futile, where resistance is overcome by threats of death or great bodily harm, or where the female is unable to resist because of the lack of mental or physical faculties.* In such a case there is no consent and the force involved in penetration will suffice. *All the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm.* If

there is actual consent, although obtained by fraud, the act is not rape, but if to the accused's knowledge the woman is of unsound mind or unconscious to an extent rendering her incapable of giving consent, the act is rape. Likewise, the acquiescence of a child of such tender years that she is incapable of understanding the nature of the act is not consent.

(Emphasis added.)

S.W.2d 767 (1986); *State v. Willis,* 370 N.W.2d 193 (S.D.1985); *State v. Spaulding,* 313 N.W.2d 878 (Iowa 1981); *State v. Risen,* 192 Or. 557, 235 P.2d 764 (1951); *Shelton v. State,* 196 Ga.App. 163, 395 S.E.2d 618 (1990); *State v. Gillette,* 102 N.M. 695, 699 P.2d 626 (App.1985). The Army and Air Force Courts of Military Review also have adopted this view, *United States v. Bradley, supra; United States v. Torres,* 27 MJ 867, 869 (AFCMR 1989), *op. set aside,* 29 MJ 299 (CMA 1989), *unpub. op. clarifying prior opinion* (November 15, 1989), *pet. denied,* 30 MJ 226 (1990); *United States v. Dejonge,* 16 MJ 974, 976 (AFCMR 1983), *pet. denied,* 18 MJ 92 (1986). We agree.

■ To recognize that a parent or authority figure *can* exert a moral, psychological, or intellectual force over a child is merely to recognize the obvious. It is equally obvious, however, that all children do not invariably acquiesce to parental will. The questions thus remain: Was the child forced? and, Did the child consent? "Compulsion of parental command" never becomes an alternate test.[4] If operative, however, it *may* establish that the child was forced and that consent was lacking. With this in mind, we return to the judge's instructions.

Prior to uttering the challenged fragment, the military judge gave these general instructions regarding force and lack of consent:

■ The act of sexual intercourse must have been done *by force and without the victim's consent.*

■ The lack of consent required, however, is *more than mere lack of acquiescence.*

■ If a woman fails to make the lack of consent reasonably known by taking such measures of resistance as are called for by the circumstances, *the*

*inference may be drawn that she did consent.*

(Emphasis added.)

Additionally, regarding the relationship between force and lack of consent, the judge amplified by stating the following:

■ Consent, however, may not be inferred *if resistance would have been useless.*

■ Consent to sexual intercourse *if induced by fear, fright or coercion,* is equivalent to physical force.

(Emphasis added.)

Further, regarding the amount of resistance required, the judge had explained:

A rape victim's resistance need only be such as to make a lack of consent and actual resistance reasonably manifest, *having regard to her age, her strength and the surrounding circumstances.*

(Emphasis added.)

The foregoing are fully consistent with universally recognized principles, and the defense made no objection to them.[5]

■ In context, it is clear enough that the challenged language supplemented, but did not cancel or change, the preceding instructions. Certainly, the judge created no *per se* rule. The requirement of force and lack of consent remained paramount. As we have indicated, compulsion of a parental command is no different species from any other form of constructive force, and the judge did not suggest otherwise. Even if the instructions might have been better crafted, they were adequate enough, taken as a whole, so that no substantial right of appellant was prejudiced. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).   //

## II

■ Appellant also contends that evidence in the record of force and lack of consent was insufficient to sustain the find-

4. "Compulsion" is defined as "an act of compelling: a driving by *force,* power, pressure, or necessity." *Webster's Third New International Dictionary Unabridged* 468 (1986)(emphasis added). *See also Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217, 1225 (1986).

5. After the complained-of passage, the judge also instructed, without defense objection, as follows:

Likewise, the acquiescence of a child of such tender years that she is incapable of understanding the nature of the act is not consent.

ings of guilty. The prosecution's case consisted of essentially the following evidence: The victim's testimony, wherein she graphically described all the offenses; the testimony of two Air Force Office of Special Investigations (OSI) agents, relating appellant's devastating oral admissions; a letter written by appellant to his wife, containing extremely damaging admissions; and the testimony of an expert, who described typical symptoms exhibited by children subjected to sexual abuse and who concluded that the victim appeared to exhibit such symptoms. The opinion below comprehensively sets out the prosecution's evidence. 29 MJ 929, 930–33. (1989).

The defense presented no evidence of its own on the merits, but relied instead on attacking the prosecution witnesses' credibility through cross-examination.

The Court of Military Review branded appellant's claim of insufficiency as "totally at odds with the evidence." 29 MJ at 934. Suffice it to say, we agree with the Court of Military Review. By whatever standard, the evidence of force and lack of consent was sufficient to sustain the findings of the factfinder. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). No one who has read this record could fairly conclude otherwise.

### III

Appellant also contends that the Court of Military Review applied the wrong standard in reaching its determination that the evidence of rape was sufficient. According to appellant, that court relied "solely on this 'parental relationship' from which they presumed force to exist despite the fact that the record is devoid of the use of any force by appellant to commit the alleged rapes." Further, appellant argues: "The decision of the Court of Military Review that a 'parental relationship' renders it unnecessary for the government to prove force and lack of consent is wrong...."

6. The defense position with respect to appellant's admissions to the military police was that

In short, appellant completely mischaracterizes the Court of Military Review's opinion. Nothing in its holding implies such a presumption or rule. 29 MJ at 934.

### IV

Appellant next applies all of the foregoing arguments to Charge III and its specification (indecent assault). "Force," *per se*, is not a specific element of indecent assault—para. 63b, Part IV, Manual, *supra.;* the offense may be committed by an "offensive touching" which is "without the lawful consent of the person affected." Paras. 63c and 54c(1)(a), Part IV, Manual, *supra.*

Regarding the sufficiency of evidence of indecent assault, it was equally convincing. As to the adequacy of instructions, no equivalent series of "force and lack of consent" instructions were given. Nonetheless, to the extent the rape instruction on compulsion by parental command may have carried over to the lack-of-consent element of indecent assault, we reach the same result as we did in Part I. Lack of consent remained the issue; the court members were not mislead. Compliance with parental command did not become an alternate or lesser test.

### V

The only remaining aspect of the specified issues concerns the military judge's failure to instruct *sua sponte* on "mistake" as to rape and indecent assault. *See United States v. Taylor*, 26 MJ 127 (CMA 1988). The claim is that the judge should have given an affirmative-defense instruction of mistake of fact as to the victim's lack of consent. At trial, however, the defense position was that the contact did not occur. The defense theory was that a hateful child invented the claim.⁶

We have recognized that there are times when a military judge has a duty to instruct on a defense which has been reason-

they were the product of duress and extortion.

ably raised by the evidence, even though the defense fails to request it. *United States v. Taylor, supra* at 128–29. The Court of Military Review concluded here "that the mistake of fact defense was not reasonably raised by the evidence at trial." 29 MJ at 935. We read the record the same way.

## VI

■ In granted issue III (*see* n. 2, *supra*), appellant challenges the testimony of Major Nancy Slicner, a child psychologist. Appellant contends that Dr. Slicner's testimony constituted "a personal opinion concerning the guilt of appellant." Appellant also contends that her testimony amounted to "a sort of a 'profile' of a child sexual abuser" and that she became a "human lie detector."

In a pretrial ruling, the military judge specifically precluded the Government from eliciting this sort of testimony from the witness, and the witness did not so testify. What she did describe, generally, was the intra-family dynamics in typical incest cases, and she summarized characteristics commonly found in abused children. She also described briefly her practice of testing whether a child "can differentiate between fantasy and fact." Further, based upon her evaluation of the victim, Dr. Slicner concluded that she bore the symptoms of one who had been sexually abused. At no point in her testimony did the witness either opine concerning the guilt of appellant, profile a child sexual abuser, or become a human lie detector.

Dr. Slicner's testimony was fully in accordance with the limitations set forth by the military judge and with the prior decisions of this Court. *United States v. Arruza*, 26 MJ 234, 239 (CMA 1988)(Sullivan, J., concurring in the result), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *United States v. Tolppa*, 25 MJ 352 (CMA 1987). Like the Court of Military Review, 29 MJ at 936, we deem this testimony unobjectionable.

## VII

■ The final issue concerns admission of uncharged-misconduct evidence. The victim testified on redirect examination, over defense objection, that appellant had shown her a pornographic VCR movie. Though the record does not establish exactly when this viewing occurred, the Court of Military Review concluded that it occurred during the time period that appellant was indecently assaulting the victim and preparing her for intercourse. 29 MJ at 938. The record supports this inference. That court also concluded that the testimony met our three-part standard (*United States v. White*, 23 MJ 84, 86–87 (CMA 1986)) for determining admissibility of uncharged-misconduct evidence. 29 MJ at 938. We agree entirely with the Court of Military Review's analysis in this respect. *Cf. United States v. Ciulla*, 32 MJ 186 (CMA 1991).

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.