# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––

**No. ACM 39889 (rem)**

––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Alexander L. DRISKILL**
Airman (E-2), U.S. Air Force, *Appellant*

––––––––––––––

On Remand from

The United States Court of Appeals for the Armed Forces

Decided 14 November 2025

––––––––––––––

*Military Judge*: Willie J. Babor; Dayle P. Percle (remand).

*Sentence*: Sentence adjudged on 4 November 2019 by GCM convened at Ramstein Air Base, Germany; Aviano Air Base, Italy; and Buckley Air Force Base, Colorado. Sentence entered by military judge on 2 March 2020, and reentered on 20 January 2022: Dishonorable discharge, confinement for 40 years and 9 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Major Frederick J. Johnson, USAF.

*For Appellee*: Colonel G. Matt Osborn, USAF; Colonel Matthew D. Talcott, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Brittany M. Speirs, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DOUGLAS, and MCCALL, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge MCCALL joined. Senior Judge DOUGLAS filed a separate opinion concurring in the result.

––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

Appellant's case is before this court for a third time. A military judge found Appellant guilty, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of wrongful possession of obscene cartoons in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] Contrary to his pleas, a general court-martial composed of officer members found Appellant guilty of the Additional Charge including one specification of rape of a child (Specification 1) and one specification of sexual abuse of a child (Specification 2), both in violation of Article 120b, UCMJ, 10 U.S.C. § 920b. The members sentenced Appellant to a dishonorable discharge, confinement for 40 years and 9 months, forfeiture of all pay and allowances, and reduction to the grade of E-1.[2,3,4]

The procedural history of this case is described in this court's 2022 opinion. *See United States v. Driskill*, No. ACM 39889 (f rev), 2022 CCA LEXIS 496, at *2–5 (A.F. Ct. Crim. App. 23 Aug. 2022) (unpub. op.), *rev'd*, 84 M.J. 248 (C.A.A.F. 2024) (*Driskill II*). For purposes of this opinion a condensed version will suffice. This court previously reviewed this case twice. Upon initial review, this court remanded the record because the convening authority failed to take action as required on Appellant's entire sentence. *United States v. Driskill*, No. ACM 39889, 2021 CCA LEXIS 672, at *11–12 (A.F. Ct. Crim. App. 14 Dec. 2021) (unpub. op.) (*Driskill I*). Following remand, this court's subsequent re-

———————————

[1] As noted in this court's previous opinion, the specifications covered the time period from 11 October 2016 to 27 March 2018. References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Further, the Military Justice Act of 2016, National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5001–5542 (23 Dec. 2016), as fully implemented by Exec. Order 13,825, 83 Fed. Reg. 9889 (8 Mar. 2018), applied to Appellant's court-martial and post-trial processing. Unless otherwise noted, all other references to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The military judge merged the specifications of rape of a child and sexual abuse of a child for sentencing.

[3] After trial, the convening authority suspended the adjudged forfeitures of all pay and allowances for six months, release from confinement, or expiration of term of service, whichever was sooner, with suspension commencing on 18 November 2019.

[4] Appellant was credited with 278 days in pretrial confinement.

view affirmed the findings but approved only so much of the sentence as provided for a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. *Driskill II*, unpub. op. at *2, 57–58.

The United States Court of Appeals for the Armed Forces (CAAF) granted review and held that Appellant's conviction for wrongful possession of obscene cartoons in violation of Article 134, UCMJ, violated prohibitions against double jeopardy. *United States v. Driskill*, 84 M.J. 248, 249–50 (C.A.A.F. 2024). The CAAF set aside the findings as to that charge and specification and dismissed them with prejudice. *Id.* at 257. The CAAF remanded the case to this court to conduct "a new review under Article 66, UCMJ," 10 U.S.C. § 866, specifically directing this court to "evaluate the impact of [the CAAF's] dismissal of the Charge and its Specification on both (1) the findings of the Additional Charge and its Specifications and (2) the sentence." *Id.*

## I. BACKGROUND

Before the current charges and specifications were preferred in this case, Appellant was tried in a separate general court-martial at Aviano Air Base, Italy. *Id.* at 250. In that case, the Government charged Appellant with three specifications of violating Article 134, UCMJ, while he was stationed in Italy. The first two specifications alleged child pornography offenses and the third specification alleged knowing and wrongful possession of obscene cartoons in violation of 18 U.S.C. § 1466(b)(1). *Id.* After the close of the evidence, the military judge dismissed this latter specification because she concluded 18 U.S.C. § 1466(b)(1) "is not a statute of extraterritorial jurisdiction." *Id.* at 251. However, she declined to dismiss the specification with prejudice because she held the court-martial lacked jurisdiction to try that offense. *Id.* Appellant was later acquitted of the remaining two child pornography specifications. *Id.*

After the conclusion of his first court-martial, the Government charged Appellant in the instant case with one specification of possession of obscene cartoons under Clause 2 of Article 134, UCMJ. The Government also charged Appellant with two new specifications under an Additional Charge, alleging rape of a child and sexual abuse of a child in violation of Article 120b, UCMJ. Appellant's daughter, WD, was the named victim in both of the Article 120b, UCMJ, specifications. Before trial, Appellant's trial defense counsel filed a motion to dismiss the possession of obscene cartoons specification on the grounds of former jeopardy. The military judge denied that motion.

Following this ruling, Appellant, pursuant to a PTA, pleaded guilty to the possession of obscene cartoons. After the military judge accepted Appellant's guilty plea, the parties proceeded to litigate the Additional Charge and its two specifications. A panel of members convicted Appellant of both Article 120b,

UCMJ, specifications. As noted above, this court's subsequent review affirmed the findings as entered, but reduced Appellant's term of confinement to 30 years as a matter of sentence appropriateness.

The CAAF later set aside the findings on the Charge and Specification for possession of obscene cartoons and dismissed the Charge and Specification with prejudice. *Id.* at 257. The CAAF concluded that the prosecution of this offense was barred due to former jeopardy because the first court-martial had jurisdiction to prosecute Appellant for this offense, jeopardy attached during the first court-martial, and the specification for possessing obscene cartoons was for the same offense as in the first court-martial. *Id.* at 253–54. Our superior court then remanded the case for a "new review under Article 66, UCMJ," with specific direction to "evaluate the impact" of the dismissal of the Article 134, UCMJ, charge and specification on the remaining findings of guilty as to the Article 120b, UCMJ, offenses and the sentence. *Id.* at 257.

We conclude the error with respect to former jeopardy did not affect the findings as to the Article 120b, UCMJ, offenses, and we reassess the sentence in light of the CAAF's dismissal of the Article 134, UCMJ, charge.

## II. DISCUSSION

### A. Additional Background

Appellant entered into a PTA whereby he agreed to plead guilty to the wrongful possession of obscene cartoons in violation of Article 134, UCMJ, while pleading not guilty to the Article 120b, UCMJ, offenses. Appellant further agreed to enter into a reasonable stipulation of fact which would include, *inter alia*, that although Appellant did not know how many obscene cartoons he possessed, "the number was well in excess of 100." The PTA further provided:

> In exchange for what [Appellant] ha[s] offered to do via the proposed pretrial agreement . . . the Convening Authority agrees to direct the trial counsel to offer into evidence (1) an agreed upon exhibit containing no more than 100 cartoon images in support of the Specification of the Charge, and (2) an exhibit containing no more than 50 images to be used for purposes of [Mil. R. Evid.] 404(b). The exhibit containing no more than 100 cartoon images in support of the Specification of the Charge will be attached to the stipulation of fact as Attachment 1. The exhibit containing no more than 50 images to be used for purposes of [Mil. R. Evid.] 404(b) will be marked as a Prosecution Exhibit for Identification. The images in Attachment 1 will not contain hearsay (text in any language). If any of the images contained on the exhibit

> marked as a Prosecution Exhibit for Identification contain text in any language, [Appellant] reserve[s] the right, through counsel, to object to those images and their accompanying text on a hearsay basis, and to have [Appellant's] objection heard by the Military Judge. [A]ppellant also reserves the right to object to the images contained on the exhibit marked as a Prosecution Exhibit for Identification on any other applicable basis, except foundation, which [Appellant] agree[s] to waive via this pretrial agreement offer.

During the military judge's providency inquiry with respect to Appellant's plea of guilty to possession of obscene cartoons, the Government admitted a stipulation of fact as Prosecution Exhibit 1 (PE 1). Consistent with the PTA, in the stipulation Appellant admitted *inter alia* that he possessed well in excess of 100 obscene cartoons on his electronic devices, and that he possessed these obscene cartoons "because, to him, they were sexually arousing." Attached to PE 1 was a sealed computer disc that contained 100 of the obscene cartoons Appellant possessed, which included depictions of young girls in various sexually explicit situations, including engaging in sexual acts with adult men.

Pursuant to Mil. R. Evid. 404(b), the military judge allowed the Government to use the attachment to PE 1 as evidence of Appellant's motive and intent with respect to the litigated Article 120b, UCMJ, offenses Appellant was charged with committing on his daughter WD. In addition, the military judge permitted the Government to introduce a second disc containing 50 more cartoon images Appellant possessed as Prosecution Exhibit 2 (PE 2), also as evidence of Appellant's motive and intent as to the Article 120b, UCMJ, offenses under Mil. R. Evid. 404(b).[5] The images in PE 2 were of a generally similar nature to those in the attachment to PE 1.

During the Government's opening statement, trial counsel referred to Appellant being "sexually aroused" by the obscene cartoons, and in particular images of what "appear to be children performing sexual acts on their fathers."

When the Government published the attachment to PE 1 to the court members, the military judge instructed them:

---

[5] More precisely, the military judge permitted the Government to use the images from the attachment to PE 1 and from PE 2 as evidence of motive with respect to Specifications 1 and 2 of the Additional Charge, and as evidence of intent with respect to Specification 2 of the Additional Charge. The military judge explained this was because "there's no intent requirement for Specification 1 of the Additional Charge," rape of a child in violation of Article 120b, UCMJ.

> This evidence, that the accused knowingly and wrongfully possessed obscene cartoons, may be considered for the limited purpose of it's [sic] tendency, if any, to prove [Appellant's] motive to commit Specification 1 or 2 of the Additional Charge, as well as to prove that [Appellant] intended to commit the offense alleged in Specification 2 of the Additional Charge.
>
> You may not consider this evidence for any other purpose, and you may not conclude or infer from this evidence that [Appellant] is a bad person or has criminal tendencies and that, therefore, he committed the offenses alleged in the Additional Charge.

The military judge provided a similar instruction when the Government published PE 2 to the court members.

At trial, Appellant's spouse HD testified about a conversation she had with Appellant while they were living in Italy with WD. In this conversation, Appellant became emotional and told HD that "he couldn't stop looking at little girls." When HD asked Appellant to explain, he showed her images of child pornography on his computer, specifically "children engaging in sexual acts." When HD asked Appellant "if he would ever touch a child, a little girl," Appellant responded, "I don't know, because I can't even stop looking at a picture." HD testified she told Appellant she would consider not divorcing him or turning him in if he got "rid of" the child pornography and promised he would "never do this again." Appellant then destroyed two USB drives as HD watched. Regarding this evidence, the military judge provided the court members a similar Mil. R. Evid. 404(b) instruction as he had with the attachment to PE 1 and PE 2. Specifically, the military judge instructed the members could consider evidence Appellant "may have shown [HD] images of child pornography, and commented on his willingness to commit crimes similar to those in the images" only as evidence of motive as to Specifications 1 and 2 of the Additional Charge and evidence of intent as to Specification 2 of the Additional Charge.

The court members were informed at several points that Appellant had pleaded guilty to the Charge and Specification alleging possession of obscene cartoons in violation of Article 134, UCMJ.

During closing argument, trial counsel referred several times to the obscene cartoons and Appellant's admission that he found them sexually arousing.

When the military judge delivered his instructions on findings he advised the court members:

> An accused may be convicted based only on evidence before the court, and not on evidence of a general criminal disposition. Each

> offense must stand on its own and you must keep the evidence of each offense separate.
>
> Stated differently, if you find or believe that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any other offense. If evidence has been presented which is relevant to more than one offense, you may consider that evidence with respect to each offense to which it is relevant.
>
> The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.

The military judge also repeated the instruction that evidence Appellant "knowingly and wrongfully possessed obscene cartoons" could be considered only "for the limited purpose of its tendency, if any, to prove the accused's motive to commit Specification 1 or 2 of the Additional Charge, as well as to prove that the accused intended to commit the offense alleged in Specification 2 of the Additional Charge."

**B. Law**

Under Article 66(d), UCMJ, 10 U.S.C. § 866(d), "the Court of Criminal Appeals conducts a de novo review of the record for legal sufficiency, factual sufficiency, and sentence appropriateness." *United States v. McAlhaney*, 83 M.J. 164, 166 (C.A.A.F. 2023) (citation omitted).

The Fifth Amendment[6] guarantees that "[n]o person shall . . . be subject, for the same offense, to be twice put in jeopardy of life or limb." U.S. CONST. amend. V, cl. 2. This provision consists of three separate constitutional guarantees for an accused: (1) protection against a second prosecution for the same offense after an acquittal; (2) protection against a second prosecution for the same offense after a conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Article 44, UCMJ, 10 U.S.C. § 844, incorporates these same constitutional guarantees for service members. *United States v. Easton*, 71 M.J. 168, 170 (C.A.A.F. 2012) (citation omitted).

Where an error is of constitutional dimensions, an appellate court may not affirm the result unless the error was harmless beyond a reasonable doubt. *United States v. Mason*, 59 M.J. 416, 424 (C.A.A.F. 2004). This "standard is met where a court is confident that there was no reasonable possibility that

---

[6] U.S. CONST. amend. V.

the error might have contributed to the conviction." *United States v. Prasad*, 80 M.J. 23, 29 (C.A.A.F. 2020) (citations omitted).

In order to convict Appellant of rape of a child as alleged in Specification 1 of the Additional Charge, the Government was required to prove: (1) Appellant committed a sexual act on WD, to wit penetrating her mouth with his penis; and (2) at the time WD was under the age of 12 years. *See Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶ 45b.a.(a). In order to convict Appellant of sexual abuse of a child as alleged in Specification 2 of the Additional Charge, the Government was required to prove: (1) Appellant committed a lewd act on WD by causing her to touch, directly or through clothing, his genitalia; (2) at the time WD was under the age of 12 years; and (3) Appellant did so with the intent to gratify his sexual desire. 2016 *MCM*, pt. IV, ¶ 45b.a.(c).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is generally not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. However, such evidence may be admissible for another purpose, including, *inter alia*, proving motive or intent with respect to a charged offense. Mil. R. Evid. 404(b)(2).

Court members are presumed to follow the military judge's instructions absent evidence to the contrary. *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000).

**C. Analysis**

As an initial matter, as stated above, the CAAF set aside this court's prior opinion in *Driskill II* in its entirety and directed a new Article 66, UCMJ, review. *Driskill*, 84 M.J. at 257. Following the remand from the CAAF, both parties addressed the impact of the dismissal of the Charge and Specification on the other findings and the sentence, which the CAAF directed this court to consider. However, neither party has asked this court to readdress any of the other issues this court addressed previously in *Driskill II*. *See Driskill II*, unpub. op. at *14–36, 43–58. Having reviewed this court's prior opinion, and in the absence of any new argument from the parties, we resolve these issues—excepting the issue of former jeopardy—consistent with this court's prior opinion, with the additional caveat that we readdress the question of sentence appropriateness at the conclusion of our opinion below.

**1. Effect on Remaining Findings of Guilty**

Turning to the question our superior court directed us to address, Appellant contends this court should set aside the findings of guilty as to the Article 120b, UCMJ, offenses because those findings were improperly influenced by the erroneous prosecution for possessing obscene cartoons in violation of Article 134,

UCMJ. In the alternative, Appellant contends that if this court affirms the Article 120b, UCMJ, convictions, it should remand the case for a rehearing as to the sentence. Appellant further alternatively argues that if this court instead reassesses the sentence, it should approve no more than 15 years of confinement. In contrast, the Government contends this court should affirm the remaining findings of guilty and reassess Appellant's sentence to the same sentence it previously affirmed in *Driskill II*, including a 30-year term of confinement, or at most reduce that term of confinement by four months.[7]

Neither party's analysis explicitly tests the impact of Appellant's erroneous prosecution for possessing obscene cartoons for harmlessness beyond a reasonable doubt, despite the CAAF's finding of constitutional error. *See Driskill*, 84 M.J. at 250, 256; *Mason*, 59 M.J. at 424. Instead, both parties employ the "three-pronged test to assess the danger" of impermissible spillover stated in *United States v. Kerr*: "(1) whether the evidence of one offense would be admissible proof of the other; (2) whether the military judge has provided a proper limiting instruction; and (3) whether the findings reflect an impermissible crossover." 51 M.J. 401, 406–07 (C.A.A.F. 1999) (quoting *United States v. Southworth*, 50 M.J. 74, 76 (C.A.A.F. 1999)). In *Southworth*, 50 M.J. at 76–78, and *United States v. Curtis*, 44 M.J. 106, 128–29 (C.A.A.F. 1996), the CAAF used these factors to determine that military judges did not abuse their discretion by denying motions to sever offenses. In *Kerr*, the CAAF applied this test to determine whether the appellant "was prejudiced by the spillover effect" of evidence of uncharged misconduct, concluding he was not. 51 M.J. at 406–07.

However, we find the test articulated in *Kerr* to be of limited value in the instant case. Unlike *Kerr*, *Southworth*, and *Curtis*, here we must test a constitutional error for harmlessness beyond a reasonable doubt. Although the individual elements of the *Kerr* test bear consideration as part of the totality of the circumstances, the ultimate question remains whether we can be confident beyond reasonable doubt Appellant's erroneous prosecution for possession of obscene cartoons did not contribute to his Article 120b, UCMJ, convictions. *See Prasad*, 80 M.J. at 29.

---

[7] The Government's position with regard to the sentence is facially somewhat contradictory. On one hand, the Government asserts "Appellant is well-deserving of his 30-year confinement sentence." On the other hand, the Government contends this court should "affirm the findings and sentence in this case." The Government appears to overlook the fact that when the CAAF set aside this court's opinion in *Driskill II*, it also set aside the reduction of Appellant's term of confinement from the adjudged 40 years and 9 months to 30 years. Viewed as a whole, in light of the circumstances, we understand the Government's position to be that this court should approve a 30-year term of confinement.

Considering the circumstances as a whole, we are satisfied beyond a reasonable doubt the error did not influence Appellant's convictions for rape of a child and sexual abuse of a child. The essential questions include (1) what, if anything, would have transpired differently at Appellant's court-martial with respect to the litigated Article 120b, UCMJ, offenses if the double jeopardy violation had not occurred, and (2) how might these differences have affected the outcome. Of course, without the Article 134, UCMJ, charge, there would have been no guilty plea, no PTA, and no stipulation of fact. These are significant differences in themselves, but the essential question is how these changes would have affected the litigation of the contested offenses. We find three significant points that warrant discussion: use of the obscene images as Mil. R. Evid. 404(b) evidence of Appellant's motive and intent; informing the court members that Appellant had pleaded guilty to the wrongful possession of obscene cartoons; and Appellant's admission in PE 1 that he found the obscene images sexually arousing.

First, we find the Government would have introduced some number of the obscene images that were the subject of the Article 134, UCMJ, charge as Mil. R. Evid. 404(b) evidence of motive and intent of the Article 120b, UCMJ, offenses, even if the possession of obscene images had not been charged. Appellant's possession of a large number of sexually explicit cartoon images of young girls, including young girls engaged in sexual acts with adult men, was relevant evidence of a particular sexual interest in young girls. Such an interest indicated a motive for Appellant to commit sexual acts with his then approximately two-year-old daughter WD. It is true the PTA anticipated the parties would agree upon no more than 100 images to be attached to the stipulation of fact as evidence of Appellant's guilt of the Article 134, UCMJ, offense, and that the Government would offer an additional exhibit with no more than 50 additional images as a separate prosecution exhibit. However, this provision was styled as a commitment by the convening authority in exchange for Appellant's guilty plea rather than a concession by Appellant. The PTA terms did not prohibit the Defense from opposing the use of these images as Mil. R. Evid. 404(b) evidence of the contested offenses. However, at trial, although the Defense objected to file names and certain words included with images in PE 2, they did not object to the attachment to PE 1 or PE 2 as Mil. R. Evid. 404(b) on relevance grounds. This suggests both parties believed the obscene images were Mil. R. Evid. 404(b) evidence of motive and intent. In any event, whether the Defense had opposed the images or not, we are convinced that without the guilty plea and PTA the Government would have successfully introduced some representative sample of the large number of obscene images of young girls to support the inference Appellant had motive and intent to commit sexual acts with WD, with appropriate limiting instructions similar to those the military judge provided at trial.

Next, we have considered that the court members were informed at various points that Appellant pleaded guilty to wrongfully possessing obscene cartoons. However, the military judge provided appropriate anti-spillover instructions to the effect that Appellant's guilt of that offense could not be used to infer, assume, or prove he was guilty of the contested offenses. Court members are presumed to follow the military judge's instructions absent evidence to the contrary. *Taylor*, 53 M.J. at 198. We do not find such evidence here. Accordingly, we conclude the information Appellant pleaded guilty to with respect to the Article 134, UCMJ, charge did not contribute to his convictions for the contested offenses.

Turning to Appellant's admission in the stipulation of fact that he found the obscene images sexually arousing, his sexual interest was plainly implied by his possession of a large number of such images even if he had not explicitly admitted it. The images in question are pornographic as well as obscene. Although during argument trial counsel might not have been able to recite Appellant's own words to the court members in quite the same way, trial counsel would have been able to direct the court members to the same inferences and conclusions. This is particularly so when the obscene images are viewed in conjunction with his wife HD's testimony that Appellant had showed her a collection of images of child pornography, admitted he could "not stop looking at little girls," and said he did not know if he would "ever touch a child, a little girl." We conclude beyond a reasonable doubt the findings as to the contested offenses would have been the same regardless of the existence of this admission in the stipulation of fact.

Considering the entirety of the evidence and the totality of the circumstances,[8] we are convinced beyond a reasonable doubt the findings as to rape of a child and sexual abuse of a child in violation of Article 120b, UCMJ, would have been unchanged had the double jeopardy violation not occurred.[9]

---

[8] For a more detailed description and analysis of the evidence supporting Appellant's convictions for rape of a child and sexual abuse of a child, see *Driskill II*, unpub. op. at *5–23.

[9] In addition, to the extent the *Kerr* test described *supra* applies to our inquiry, we find all three prongs weigh in favor of finding no impermissible spillover. 51 M.J. at 406–07. With regard to the first prong, as described above, evidence of the obscene cartoons would have been admissible proof of the Article 120b, UCMJ, offenses to the extent that they demonstrated motive and intent consistent with Mil. R. Evid. 404(b). In other words, the impact of the obscene cartoon evidence would have been much the same with or without the Article 134, UCMJ, charge. As to the remaining prongs, the military judge did provide appropriate limiting instructions, and the findings do not reflect improper spillover given the strength of the proper evidence of the Article 120b, UCMJ, offenses.

**2. Sentence Reassessment**

Next we consider whether, in light of the CAAF's dismissal of the Article 134, UCMJ, charge, we can reliably reassess Appellant's sentence, or instead must remand the case for a rehearing on the sentence. *See United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). Our task is to discern whether we can "determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity." *Id.* at 15 (quoting *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006)) (additional citation omitted). Because the error was of constitutional dimensions, we must ensure a reassessment excises the prejudice beyond a reasonable doubt. *See Mason*, 59 M.J. at 424. We find that we can reliably reassess.

First, we find there has not been a dramatic change in the penalty landscape and Appellant's exposure. *See id.* The maximum imposable punishment for the convicted offenses remains unchanged, including *inter alia* confinement for life without the possibility of parole and a mandatory dishonorable discharge. This factor favors reassessment.

Second, Appellant was sentenced by court members rather than the military judge. *See id.* at 16. This factor favors a rehearing.

Third, the remaining offenses "capture the gravamen of the criminal conduct included within the original offenses." *Id.* By multiple measures, the significance of Appellant's convictions for rape of a child and sexual abuse of a child was far greater than that of his conviction for possession of obscene cartoons. This factor favors reassessment.

Fourth, the remaining offenses of rape of a child and sexual abuse of a child are of a type the judges of this court "have experience and familiarity with." *Id.* This factor also favors reassessment.

In addition, recognizing these four factors are "illustrative, but not dispositive," we note an additional significant aspect of this case. *Id.* at 15. The court members adjudged a term of confinement of 40 years and 9 months, but in *Driskill II* this court reduced the term of confinement to 30 years as a matter of sentence appropriateness. *Driskill II*, unpub. op. at *57. We are confident beyond a reasonable doubt that without the Article 134, UCMJ, conviction, the court members would have sentenced Appellant to at least 30 years in confinement. In addition, we find such a term of confinement is not inappropriately severe for the remaining convictions. Accordingly, we reassess Appellant's sentence to a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

**D. Post-Trial Delay**

On 1 April 2024, Appellant's record of trial was redocketed with this court following the CAAF's remand. Appellant requested and was granted 11 enlargements of time, over the Government's opposition, before filing his brief on 27 May 2025. The Government timely filed its response on 26 June 2025, and Appellant filed a reply brief on 3 July 2025.

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals." 63 M.J. at 142. Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Id.* at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We review de novo an appellant's entitlement to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 135).

Over 18 months have elapsed since Appellant's record of trial was redocketed with this court. Therefore, under *Moreno*, there is a facially unreasonable delay. We have considered the *Barker* factors and find no violation of Appellant's due process rights. Appellant has not specifically alleged cognizable prejudice from the delay, and under the circumstances we do not discern any oppressive incarceration, particularized anxiety or concern, impairment to any further appeal, and no rehearing has been directed. Absent prejudice, we find the delay—primarily attributable to Appellant's 11 motions for enlargement of time—has not been so egregious as to adversely affect the perception of the military justice system. Accordingly, we find no violation of Appellant's due process rights; nor do we find any relief warranted in the absence of a due process violation. *See* 10 U.S.C. § 866(d)(2); *United States v. Valentin-Andino*, 85 M.J. 361, 364 (C.A.A.F. 2025).

### III. Conclusion

We reassess the sentence to a dishonorable discharge, confinement for 30 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The remaining findings of guilty as to Specifications 1 and 2 of the Additional Charge and the Additional Charge, and the sentence, as reassessed, are correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). The findings of guilty as to Specifications 1 and 2 of the Additional Charge and the Additional Charge, and the sentence, as reassessed, are **AFFIRMED**.

DOUGLAS, Senior Judge (concurring in the result):

I concur in the result for the remaining findings of guilty and the sentence. However, I write separately because, in my opinion, our new Article 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866, *de novo* review, hinges upon two separate standards of review of disparate evidence.

Because our superior court set aside one of Appellant's convictions, determined after a guilty plea and pursuant to a pretrial agreement, we must decide which evidence, if any, is available for our consideration of whether the remaining findings and sentence are correct in law and fact, or whether any error occurred that was materially prejudicial to the substantial rights of Appellant. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

**A. Harmless Beyond a Reasonable Doubt: The Stipulation of Fact**

At trial, Appellant entered a plea of guilty to violating one specification of Article 134, UCMJ, 10 U.S.C. § 934, knowing and wrongful possession of obscene cartoons. Appellant agreed he would "enter into a reasonable stipulation of fact." The stipulation of fact was entered as evidence, and labeled Prosecution Exhibit 1 (PE 1).

PE 1 is a two-page document and was used by the trial judge in his providency inquiry with Appellant. Paragraph five reads as follows:

> The [Appellant] agrees and admits that he wrongfully possessed obscene cartoons. The cartoons were obscene in that their sexual content was patently offensive in light of community standards. Finally, the cartoons possessed by the [Appellant] lacked serious literary, artistic, political, or scientific value. The [Appellant] did not possess these obscene cartoons for any artistic reason. *The [Appellant] possessed these obscene cartoons because, to him, they were sexually arousing.*

(Emphasis added).

Appellant informed the members of his guilty plea and agreed that PE 1 could be used as evidence of the contested findings. Trial counsel referred to the emphasized language above, in part, to rationalize for the members Appellant's actions as alleged in the contested findings.

Independent of the stipulation of fact, Appellant's spouse, HD, testified that after Appellant showed her certain images of children on his computer, she asked him if "he got off on this?" Appellant replied, "Why does anybody look at pornography, [HD]?" The trial judge admitted this evidence under Mil. R. Evid. 404(b), as well as additional evidence, discussed below.

A plea agreement may include a promise by the accused to plead guilty to, or to enter a "confessional" stipulation. R.C.M. 705(b)(1). "Confession" means an acknowledgement of guilt. Mil. R. Evid. 304(a)(1)(B). The Fifth Amendment right against self-incrimination[*] and Article 31, UCMJ, 10 U.S.C. § 831, apply during pretrial and trial stages. *United States v. Scott*, 51 M.J. 326, 329 (C.A.A.F. 1999).

Where an error is of constitutional dimensions, an appellate court may not affirm the result unless the error was harmless beyond a reasonable doubt. *United States v. Mason*, 59 M.J. 416, 424 (C.A.A.F. 2004). An error is harmless beyond a reasonable doubt when the error did not contribute to Appellant's conviction or sentence. *United States v. Hills*, 75 M.J. 350, 357 (C.A.A.F. 2016). This "standard is met where a court is confident that there was no reasonable possibility that the error might have contributed to the conviction." *United States v. Prasad*, 80 M.J. 23, 29 (C.A.A.F. 2020) (citations omitted).

Here, Appellant agreed that the confessional stipulation of fact, for the offense set aside, could be used against him for the contested offenses. Because the trial judge admitted it not only for the providency inquiry, but also for these purposes, this is error. However, I find it harmless error.

First, Appellant's confession, as written in PE 1, that he "*possessed these obscene cartoons because, to him, they were sexually arousing*" does not prove most, if not all, of the elements of either remaining conviction (rape of a child and sexual abuse of a child). The two elements of child rape include a sexual act against WD, and that she had not yet attained the age of 12. The three elements of sexual abuse of a child include a lewd act upon WD, that she had not yet attained the age of 12, and that his intent was to gratify his sexual desire. At best, Appellant's confession that the cartoon images were sexually

---

[*] U.S. CONST. amend. V.

arousing could be used to explain his intent for the lewd act upon WD. Assuming Appellant's confession satisfies element three of the offense of sexual abuse of WD, the Government still must prove the remaining elements of both offenses.

Second, Appellant's confession was redundant to the sarcastic response he made to his spouse. She asked him, did he "get off" on the images he possessed and showed her. In more precise terms, HD asked Appellant if he was sexually aroused by looking at the images he showed her. His sarcastic reply, "why does anybody look at pornography," was in effect, an affirmative, "yes." Therefore, even without the confessional stipulation of fact, the Government admitted another confession, albeit through a witness, and under Mil. R. Evid. 404(b).

Therefore, I am confident admitting the confessional stipulation of fact did not contribute to Appellant's remaining convictions. *Hills*, 75 M.J. at 375.

## B. Abuse of Discretion: The Evidence of Crimes, Wrongs, or Other Acts

One evening, HD asked Appellant to tuck her into bed. They discussed whether either was hiding anything from the other. Appellant admitted he had been hiding something for some time. Appellant then told HD that he "could not stop looking at little girls." HD was confused. They walked from the bedroom to their living room, where Appellant had his laptop computer. Appellant and HD sat down, and Appellant began to show HD images. The images were of child pornography. HD then asked Appellant if he "got off on this," which Appellant replied, "Why does anybody look at pornography, [HD]?" HD asked how he came to have these images, and Appellant explained he searched for them on the "black web." HD asked Appellant if he would ever "touch a child, a little girl." Appellant replied, "I don't know because I can't even stop looking at a picture." HD told Appellant to "get rid" of these images, and if he agreed to not look at these images again, she would not divorce him or report him. In front of her, Appellant threw one USB (Universal Serial Bus) drive into their fireplace and another he "tore into pieces" and threw in the trash. HD believed those were the only devices he had that contained images of this type. The next morning, Appellant denied that he would ever touch a child.

In response to a defense motion to exclude portions of HD's testimony, the trial judge ruled admissible under Mil. R. Evid. 404(b) that (1) Appellant showed images of child pornography to HD, and that (2) Appellant commented to HD upon his willingness to commit similar acts upon children to those demonstrated in the images.

The trial judge explained this evidence was to show motive as to both child rape and sexual abuse of a child, and intent as to sexual abuse of a child. The rationale was due to the similarity between the admitted Mil. R. Evid. 404(b) evidence and the charged offenses.

Specific to motive, the trial judge ruled that the trier of fact, when considering Appellant's motives for committing the contested offenses could consider the charged acts served as an "outlet for the emotion of lust." Specific to intent, the trial judge ruled that the trier of fact, when considering Appellant's intent in the commission of sexual abuse of a child, could consider Appellant's state of mind.

For both motive and intent, the trial judge determined the similarity was sufficient between the admitted Mil. R. Evid. 404(b) evidence and the alleged crimes to satisfy the three-part test of *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989). The trial judge relied primarily upon the rationale provided in *United States v. Hays*, 62 M.J. 158, 164 (C.A.A.F. 2005).

PE 1 has one attachment: a disc containing 100 cartoon images. Pursuant to the pretrial agreement, PE 1, including the attachment, would be admitted "in support of" the now set aside offense. The 100 cartoon images were lawfully seized by the Government. At trial, Appellant and counsel for both sides agreed the use of these images would be to show Appellant's "motive with respect to both [remaining offenses], and his intent with respect to the second [offense (sexual abuse of a child)]."

PE 2 is a separate disc containing an additional 50 cartoon images. This exhibit was also referenced in the pretrial agreement. Explicitly, this exhibit would be admitted "for purposes of [Mil. R. Evid.] 404(b) . . ." The trial judge ruled PE 2 would be admitted under Mil. R. Evid. 404(b) "consistent with the 404[(b)] ruling earlier in this case." These images were also lawfully seized by the Government.

We review the trial judge's decision to admit or exclude evidence for abuse of discretion. *United States v. Greene-Watson*, 85 M.J. 340, 345 (C.A.A.F. 2025) (citing *United States v. Wilson*, 84 M.J. 383, 390 (C.A.A.F. 2024)). Trial judges abuse their discretion if: (1) the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) they use incorrect legal principles; or (3) their application of the correct legal principles to the facts is clearly unreasonable. *Id.*

Trial judges are tasked with giving proper instructions including limiting instructions to preclude spillover from one offense to another distinct offense. *See United States v. Southworth*, 50 M.J. 74, 76–78 (C.A.A.F. 1999).

"Evidence of a crime, wrong, or other act . . . may be admissible for another purpose, such as proving motive . . . [or] intent . . . ." Mil. R. Evid. 404(b)(2); *United States v. Wilson*, 84 M.J. 383, 390 (C.A.A.F. 2024).

"Motive evidence shows the doing of an act by a particular person by evidencing an emotional need in that person which could have incited or stimulated that person to do that act in satisfaction of that emotion." *United States*

*v. Whitner*, 51 M.J. 457, 461 (C.A.A.F. 1999) (citing *United States v. Watkins*, 21 M.J. 224, 227 (C.M.A. 1986)). Possession of a "large number" of sexual materials in the military barracks room, including some depicting acts similar to those particularly charged, reasonably suggests an emotional need for committing the charged misconduct. *See id.* (citing *United States v. Rhea*, 33 M.J. 413, 422 (C.M.A. 1991)) (additional citation omitted).

When considering whether uncharged misconduct constitutes admissible evidence of intent under Mil. R. Evid. 404(b), we consider "whether Appellant's state of mind in the commission of both the charged and uncharged acts was sufficiently similar to make the evidence of the prior acts relevant on the intent element of the charged offenses." *United States v. Hays*, 62 M.J. 158, 164 (C.A.A.F. 2005) (quoting *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004)). "Extrinsic acts of evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Id.* (quoting *United States v. Tanksley*, 54 M.J. 169, 176 (C.A.A.F. 2000) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)).

Appellate courts apply a three-part test "to assess the danger of spillover: (1) whether the evidence of one offense would be admissible proof of the other; (2) whether the military judge has provided a proper limiting instruction; and (3) whether the findings reflect impermissible crossover." *United States v. Kerr*, 51 M.J. 401, 406 (C.A.A.F. 1999) (citing *Southworth*, 50 M.J. at 76–78, and then citing *United States v. Curtis*, 44 M.J. 106, 128 (C.A.A.F. 1997)).

Here, regardless of the references in the pretrial agreement to the cartoon image exhibits, and despite Appellant's agreement the members could consider the cartoon exhibits for the contested offenses, the trial judge thoroughly reviewed the facts, and the case law before providing his rulings. There were multiple motions and motions hearings, with witnesses, evidence, and arguments. After meticulous analysis, the trial judge admitted two portions of HD's testimony, the attachment to PE 1, and PE 2 under Mil. R. Evid. 404(b), for motive and intent. For purposes of this de novo review, Appellant objects on appeal, to our consideration of all this evidence. Appellant contends the trial judge admitted this evidence contrary to impermissible spillover.

I find the trial judge did not abuse his discretion. The trial judge's facts are well supported by the evidence. His applied the correct legal principles and his application of the correct legal principles was reasonable and measured.

Appellant's spouse, HD, explained the context in which Appellant showed her images of "child pornography" on his computer. When HD asked Appellant if he would ever "touch a child, a little girl" Appellant replied, "I don't know

because I can't even stop looking at a picture." Evidence of Appellant looking at images described by HD as child pornography and commenting to HD upon his willingness to commit similar acts upon children to those demonstrated in the images is permitted under Mil. R. Evid. 404(b)(2) to prove motive and intent. Although motive is not an element of either contested offense, motive evidence explains the emotional need Appellant could have had which incited him to commit the sexual and lewd acts upon his child, WD. *Whitner*, 51 M.J. at 461. Intent is an element of sexual abuse. Intent evidence can explain Appellant's state of mind in the commission of the charged acts when the uncharged acts are sufficiently similar. *Hays*, 62 M.J. at 158. The images are sufficiently similar, as evidenced by HD's reaction to being shown images of "child pornography," and then in the same conversation, asking her husband if he was sexually aroused by looking at these images, and then asking if he would ever touch a little girl.

The cartoon images admitted against Appellant as proof of the contested offenses totaled 150. The trial judge reasoned they were admissible under Mil. R. Evid. 404(b)(2) as evidence of motive and intent, consistent with his previous ruling regarding HD's testimony. Appellant's possession of a significant number of images, involving adult men, and female children, including some depicting acts similar to those particularly charged, reasonably suggests an emotional need for committing the charged offenses. *Whitner*, 51 M.J. at 461 (citing *Rhea*, 33 M.J. at 422).

I have carefully considered whether the evidence admitted under Mil. R. Evid. 404(b) constitutes impermissible spillover. *Kerr*, 51 M.J. 401. As already discussed *supra*, the Mil. R. Evid. 404(b) evidence was properly admitted. The trial judge crafted appropriate and narrow limiting instructions and provided them to the members at every logical and relevant stage of the proceedings. The findings do not reflect impermissible crossover. The child witness, WD, testified live at trial. Her mother, HD, and grandfather testified to her outcry statements. A forensic interviewer also testified at trial. Numerous additional witnesses testified for the Government as well as for the Defense. The findings reflect the members found Appellant guilty of the contested offenses beyond a reasonable doubt. Having determined all three parts of the *Kerr* test are satisfied, I do not find prejudicial spillover.

After reviewing the entire record and considering whether the remaining findings of guilty, and the sentence, as reassessed, are correct in law and fact, and whether any error materially prejudicial to the substantial rights of the Appellant occurred, I find no error that materially prejudices a substantial right of Appellant. Therefore, I would affirm the remaining findings and sentence, as reassessed.